UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT REED, individually; MATTIE REED, individually; ROBERT REED and MATTIE REED, as next of kin of ANDRON D. REED, deceased; and ARTAVIUS REED, individually,<br><br>    Plaintiffs,<br><br>v.<br><br>LISA SPECK and JOHN D. RUDD,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   No. 3:09-cv-01223<br>)<br>)   JUDGE SHARP<br>)   MAGISTRATE JUDGE BRYANT<br>)<br>)<br>)<br>) |

## MEMORANDUM

Lisa Speck and John D. Rudd, M.D. ("Defendants") filed a motion for summary judgment (Docket Entry No. 148), to which Robert Reed and Mattie Reed, both individually and as next of kin of Andron Reed ("Mr. Reed" or "decedent"), and Artavius Reed (collectively, "Plaintiffs"), filed a response in opposition (Docket Entry No. 174), and Defendants filed a reply (Docket Entry No. 182). Plaintiffs have also filed a motion for partial summary judgment (Docket Entry No. 161), subsequently amended (Docket Entry No. 162), to which Defendants filed a response in opposition (Docket Entry No. 176), and Plaintiffs filed a reply (Docket Entry No. 184). For the reasons discussed herein, the Court will grant Defendants' motion, deny Plaintiffs' motion, and dismiss the action with prejudice.

1

## BACKGROUND

On August 14, 2009, Tennessee state troopers pulled over a vehicle along Interstate 24 in Rutherford County.[1] Mr. Andron Reed was the driver, and Artavius Reed (decedent's brother) was the passenger. The troopers arrested Mr. Reed and his brother for a traffic violation and other criminal charges and took them to the Rutherford County Detention Center for booking. Mr. Reed refused to provide information needed to complete the booking process and was placed in a cell alone. Later in the evening, an altercation broke out between Mr. Reed and deputies at the detention center. During the altercation, deputies used pepper spray, handcuffed and shackled decedent, and put a spit net over his head. Artavius Reed heard the sounds of this altercation from his own cell.

Deputies then decided to place Mr. Reed in a restraint chair so that he would not assault more staff members or hurt himself. Speck, a licensed practical nurse, was called to the booking area at approximately 11:30 p.m., when deputies were strapping decedent into the restraint chair. Speck did not participate in restraining him. Speck saw no signs of medical problems; indeed, because of Mr. Reed's combativeness, Speck could not take his vital signs. Mr. Reed was returned to his cell, where Speck observed his movement and respirations.

Shortly after midnight, Speck entered decedent's cell to check his vital signs. Because Speck was having trouble getting a blood pressure reading, she asked a deputy to release Mr. Reed from his restraints. When he did not respond to verbal commands, Speck further asked the

---

[1] Unless otherwise noted, the facts are drawn from the parties' statements of material facts (Docket Entry Nos. 174-1 and 177) and related declarations and exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. ZenithRadio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

deputy to remove Mr. Reed from the restraint chair, place him on the floor, and take off the spit net. Speck detected that Mr. Reed had a "thready" pulse and his respirations were shallow. (Docket Entry No. 153-1, at 145:8-10.) These events took place over an approximately fifteen-minute period. Speck then instructed deputies to call an ambulance, while providing decedent with oxygen and administering chest compressions. Paramedics arrived on the scene and transported Mr. Reed to Middle Tennessee Medical Center, where he unfortunately died.

Dr. Rudd was not present at the detention center when these events took place. Speck contacted Dr. Rudd by telephone after decedent had been taken to the medical center.

Plaintiffs filed this action on December 30, 2009. The case was reassigned to this Court on June 3, 2011. (Docket Entry No. 119.) Several rulings made prior to that reassignment are relevant to the pending motions. On October 5, 2010, the Court denied Plaintiffs' motion for an exception to the notice requirement of Tennessee Code Annotated section 29-26-121 (Supp. 2011) and thus barred Plaintiffs from bringing a claim sounding in medical malpractice. (Docket Entry No. 89.) On April 11, 2011, the parties entered into a stipulated dismissal with prejudice of all defendants other than Speck and Dr. Rudd. (Docket Entry No. 113.)

## **ANALYSIS**

Plaintiffs' amended complaint (Docket Entry No. 67) pleads causes of action for battery; violation of the decedent's constitutional rights pursuant to the Fourth, Eighth, and Fourteenth Amendments; violation of the United Nations Universal Declaration of Human Rights; violation of the United Nations Convention Against Torture; intentional infliction of emotional distress; and imputed negligence. Defendants' motion seeks summary judgment as to all claims. Plaintiffs seek summary judgment on their constitutional claim.

3

**I.    Summary Judgment Standard**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. Count 1: Battery

Plaintiffs concede they have not alleged Speck or Dr. Rudd committed battery against Mr. Reed. (Docket Entry No. 174, at 12.) Therefore, summary judgment is appropriate for Defendants on Count 1.

## III. Count 2: Constitutional Claims

Plaintiffs bring a claim under 42 U.S.C.A. section 1983 (2003) for failing to provide Mr. Reed with proper medical treatment, indifference to his physical and mental health needs, and excessive force in restraining him. While Plaintiffs cite a variety of other federal constitutional provisions,[2] the gravamen of their claim arises under the due process clause of the Fourteenth Amendment. (*See* Docket Entry No. 174, at 12.) According to Dr. Rudd's uncontradicted testimony, Speck did not have the authority to intervene in the use of force against decedent. (Docket Entry No. 164-5, at 32:14-18, 33:9-24.) Because Speck and Dr. Rudd were not involved in the administration of force to restrain the decedent, the Court limits its analysis to the allegations of improper medical treatment and indifference to medical needs.

For "a [section] 1983 claim of deliberate indifference to serious medical needs . . . asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "Deliberate indifference" is

---

[2] Plaintiffs invoked the Eighth Amendment in the operative pleading, but that provision does not apply to detainees, such as decedent, who have yet to be convicted at trial. *Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979); *Leary v. Livingston Cnty.*, 528 F.3d 438, 450-51 (6th Cir. 2008). Because of the overlap between Eighth and Fourteenth Amendment case law in defining "deliberate indifference" in the prison context, however, the Court will cite Eighth Amendment jurisprudence where appropriate. As for Plaintiffs' original contention that decedent's person was unreasonably seized in violation of the Fourth Amendment, Plaintiffs do not pursue that argument at the summary judgment phase, and so the Court will not address it here.

"more than mere negligence but less than acting with purpose or knowledge." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Rather than specific intent to cause harm, "'deliberate indifference . . . is equivalent to recklessly disregarding th[e] risk.'" *Phillips*, 534 F.3d at 540 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). The deliberate indifference standard "contains both an objective component—whether the deprivation was sufficiently serious—and a subjective component—whether the prison official acted with a sufficiently culpable state of mind." *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 544 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 838-39). Specifically, the subjective component requires a showing that the defendant "'[1] subjectively perceived facts from which to infer substantial risk to the prisoner, [2] that [s]he did in fact draw the inference, and [3] that [s]he then disregarded that risk.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Comstock*, 273 F.3d at 703). The subjective requirement "is meant to prevent the constitutionalization of medical malpractice claims" and thus requires more than negligence or an incorrect diagnosis. *Comstock*, 273 F.3d at 703 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A supervisor is not liable under section 1983 for a subordinate's deliberate indifference unless the supervisor "'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Comstock*, 273 F.3d at 713 (quoting *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *accord Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982).

Applied to this case, Plaintiffs allege numerous examples of Speck's and Dr. Rudd's deliberate indifference to Mr. Reed's serious medical needs, and the parties brief these issues at considerable length. However, Defendants are nevertheless entitled to summary judgment on Count 2 because Plaintiffs have raised no genuine issue of material fact as to the subjective

component of their deliberate indifference claim. Plaintiffs have shown no triable question of fact as to a substantial risk that Speck knew about and recklessly disregarded. Instead, the record shows that Speck responded to the serious medical risks known to her. Upon realizing that Mr. Reed had a "thready" pulse and shallow respirations, she promptly instructed deputies to call an ambulance while providing him with oxygen and administering chest compressions until paramedics arrived. Under the "deliberate indifference" standard, Speck is not liable for any errors she may have made in her response or for the failure of her response to save Mr. Reed's life.

As for Dr. Rudd, his uncontradicted testimony establishes that he was absent from the detention center during the events leading up to Mr. Reed's death and did not even learn about Mr. Reed's condition until decedent had been transferred to Middle Tennessee Medical Center. (*See* Docket Entry No. 164-5, at 14:2-6.) Therefore, he did not implicitly authorize, approve, or knowingly acquiesce in Speck's treatment of decedent. *See Comstock*, 273 F.3d at 713. No reasonable jury could return a verdict for Plaintiffs against Dr. Rudd on their claim for deliberate indifference.

Accordingly, summary judgment is appropriate for Defendants, and inappropriate for Plaintiffs, as to Count 2.

**IV.     Counts 3 and 4: United Nations Claims**

Plaintiffs concede they do not have private rights of action under the United Nations Universal Declaration of Human Rights or the Convention Against Torture. (Docket Entry No. 174, at 10.) Therefore, summary judgment is appropriate for Defendants on Counts 3 and 4.

## V.     Count 5: Intentional Infliction of Emotional Distress

Plaintiffs allege that Artavius Reed suffered emotional distress because he could hear the sounds of Andron Reed's altercation with the deputies and could smell the pepper spray being used against his brother. (Docket Entry No. 67 ¶¶ 51, 73.) The undisputed facts establish, however, that Speck and Dr. Rudd did not participate in the actions allegedly giving rise to Artavius Reed's emotional distress. In the portion of Speck's deposition that Plaintiffs cite, Speck testified that she saw the correctional officers placing decedent in the restraint chair and could smell the odor of pepper spray. (Docket Entry No. 153-1, at 28:12—29:15.) However, Speck played no role in restraining Mr. Reed or administering the pepper spray. Dr. Rudd was absent from the detention center during these events.

A claim for intentional infliction of emotional distress requires (1) intentional or reckless conduct (2) so outrageous that a civilized society would not tolerate it (3) resulting in serious mental injury. *Lane v. Becker*, 334 S.W.3d 756, 762 (Tenn. Ct. App. 2010) (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). A finding of liability requires "'conduct . . . so outrageous in character, and so extreme in degree as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Bain*, 936 S.W.2d at 623 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). The Court concludes that no reasonable jury could find that these Defendants engaged in the kind of outrageous conduct that would support a claim of intentional infliction of emotional distress. Summary judgment is appropriate for Defendants on Count 5.

## VI. Count 6: Negligence

Count 6 alleges that Speck's negligence should be imputed to Dr. Rudd. (*See* Docket Entry No. 67 ¶¶ 9, 77.) Although Plaintiffs do not precisely articulate the "negligence" they seek to impute to Dr. Rudd, their claim must fail, as a matter of law. To the extent Plaintiffs are pursuing a claim of vicarious liability against Dr. Rudd for Speck's alleged medical malpractice, the prior order refusing to excuse Plaintiffs from the statutory notice requirements bars such a claim. Alternatively, to the extent Plaintiffs seek to impute Speck's alleged deliberate indifference to Dr. Rudd, Plaintiffs' failure to prevail on their underlying constitutional claim likewise dooms the vicariously liability claim. Therefore, summary judgment is appropriate for Defendants on Count 6.

## **CONCLUSION**

For all the reasons stated, Defendants' motion for summary judgment will be granted as to all counts. (Docket Entry No. 148.) Plaintiffs' motion and amended motion for partial summary judgment will be denied. (Docket Entry Nos. 161-62.) Defendants' motion to strike Plaintiffs' motion will be denied as moot. (Docket Entry No. 170.) This case will be dismissed with prejudice.

An appropriate Order shall be entered.

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE